<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                                                          )
HOWMEDICA OSTEONICS CORP.,           )
                                                                          )
                Plaintiff,           )
                                                                          )
v.                                                                     )     Civil Action No. 00-1167 (GEB)
                                                                          )
WRIGHT MEDICAL TECHNOLOGY,        )     **MEMORANDUM OPINION**
INC.,                                                              )
                                                                          )
                Defendant.        )
_____ )

**<u>BROWN, Chief Judge</u>**

      This matter comes before the Court upon the motion of Plaintiff Howmedica Osteonics Corp. ("Howmedica" or "plaintiff") for dismissal, judgment on the pleadings, or summary judgment on Defendant Wright Medical Technology, Inc.'s ("Wright" or "defendant") counterclaim for inequitable conduct. (Doc. No. 151.) The motion is opposed by Wright, who also cross-moved for summary judgment. (Doc. No. 152.) The matter was fully briefed on March 1, 2010. For the reasons that follow, Howmedica's motion will be denied, and Wright's motion will also be denied.

**I.    BACKGROUND**

      This is a ten year old patent dispute regarding prosthetic knee technology. Claims 15 and 18 of the patent in suit, U.S. Patent No. 5,824,100 (the '100 patent), have been adjudged invalid by this Court on summary judgment because all of their features are anticipated by U.S. Patent

No. 5,133,758 ("the Hollister patent").  Wright counterclaimed against Howmedica alleging inequitable conduct for failure to disclose the invalidating Hollister patent to the United States Patent and Trademark Office ("USPTO") during prosecution of the patent in suit. (Am. Countercl. at ¶ 29; Doc. No. 34.) Howmedica now moves for summary judgment against Wright's counterclaim for inequitable conduct, arguing that: (1) Wright's counterclaim is now moot; (2) the Court should exercise its discretion to decline declaratory judgment jurisdiction; (3) the Court should dismiss Wright's counterclaim on the pleadings because Wright's pleading is insufficient; and (4) the Court should grant summary judgment against a finding of inequitable conduct because there is an absence of deceptive intent.  (Pl.'s Br. at i, Doc. No. 151-1.)  Wright cross-moves for summary judgment, arguing that summary judgment should be entered in its favor on the inequitable conduct issue. (Def.'s Br. at i; Doc. No. 152-3.)

      A.      Facts

The undisputed facts that relate to the inequitable conduct counterclaim are sparse.  There were four parties involved in the prosecution of the '100 patent: Marc G. Weissman (co-inventor of the '100 patent); Marc Kester (co-inventor of the '100 patent); Alfred Zarnowski (Howmedica's Vice President for Intellectual Property); and Arthur Jacob (a registered United States patent attorney who prosecuted the application that matured into the '100 patent). (Pl.'s Response to Def.'s 56.1 Stmt at ¶¶ 2,3; Doc. No. 153-1.) The parties agree that the anticipatory Hollister reference was never disclosed to the USPTO.  (*Id.* at ¶ 2.)  Facts regarding the parties' knowledge of the Hollister patent, their knowledge of the materiality of the Hollister patent, and their actions during prosecution of the '100 patent are all disputed.  (*Id.* at ¶¶ 2-24.)

B.   **Procedural History**

This case began on March 10, 2000, when Howmedica filed a complaint alleging patent infringement. (Doc. No. 1.) After a *Markman* hearing and an appeal to the Federal Circuit, Wright moved for summary judgment on February 6, 2009, arguing that the '100 patent is invalid as anticipated by Hollister. (Doc. No. 131.) On November 24, 2009, this Court granted Wright's motion and adjudged claims 15 and 18 of U.S. Patent No. 5,824,100 – the only claims asserted in this lawsuit – invalid because every feature of those claims is disclosed in the Hollister patent. (Doc. Nos. 147, 148.) After finding the asserted claims invalid, the only remaining piece of this lawsuit is the inequitable conduct counterclaim that Wright asserted against Howmedica. On January 22, 2010, Howmedica filed the instant motion to dismiss, motion for judgment on the pleadings, or summary judgment alleging that the inequitable conduct counterclaim should be dismissed. (Doc. No. 151.) The matter was opposed by Wright via a cross-motion for summary judgment. (Doc. No. 152.) The matter was fully briefed on March 1, 2010. (Doc. No. 153.)

II.   **DISCUSSION**

A.   **Standard of Review**

1.   **Judgment on the Pleadings Standard**

"A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6)." *Borough of Sayreville v. Union Carbide Corp.*, 923 F. Supp. 671, 676 (D.N.J. 1996) (citing *Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and

the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

      **2.**      **Summary Judgment Standard**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

### B. Analysis

Howmedica advances the following four arguments in support of its motion, that: (1) Wright's counterclaim is now moot; (2) the Court should exercise its discretion to decline declaratory judgment jurisdiction; (3) the Court should dismiss Wright's counterclaim on the pleadings because Wright's pleading is insufficient; and (4) the Court should grant summary judgment of no inequitable conduct because there is an absence of deceptive intent. (Pl.'s Br. at i, Doc. No. 151-1.) Wright cross-moved for summary judgment, arguing that summary judgment should be entered in its favor on the inequitable conduct issue. (Def.'s Br. at i; Doc. No. 152-3.)

#### 1. Procedural Arguments: Mootness, the Court's Discretion, and Pleading Standards

##### a. Mootness

Howmedica first argues that the inequitable conduct counterclaim is moot because the Court has already adjudged that claims 15 and 18 of the '100 patent - the only claims asserted in this lawsuit - are invalid as anticipated by the Hollister reference. (Mem. Op. at 1; Doc. No. 147.) They argue that "there remains no case or controversy over Wright's alleged infringement

of the '100 patent, and Wright's counterclaim alleging unenforceability due to inequitable conduct should be dismissed as moot." (Pl.'s Br. at 4; Doc. No. 151-1). Wright argues that there are three remaining concrete disputes left in this case: (1) Wright's claim for attorney fees; (2) the elimination of every claim in the patent, as opposed to just claims 15 and 18; and (3) an "additional backstop . . . on appeal." (Def.'s Br. at 28; Doc. No. 152-3.)

In support of its argument that the inequitable conduct counterclaim is moot, Howmedica cites to *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007), in which the Federal Circuit affirmed a district court's grant of summary judgment that the asserted patents were invalid and dismissed as moot a counterclaim asserting inequitable conduct. *Id.* Wright distinguishes *Liebel-Flarsheim* by noting that the asserted patents in that case were held invalid for failure to comply with the written description and enablement requirements of 35 U.S.C. § 112, and the defendant's inequitable conduct counterclaim based on failure to disclose material prior art was unrelated to the invalidity finding. (Def.'s Br. at 29; Doc. No. 152-3.)

Wright argues that when an accused infringer seeks attorneys fees, as here, an inequitable conduct counterclaim is not mooted by a determination of patent invalidity. (*Id.*) The Federal Circuit has repeatedly held this to be the case. *See Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1188 (Fed. Cir. 1993) ("This [inequitable conduct] issue is not mooted by our decision holding the patent invalid in view of KLM's motion for attorney fees"); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1466 (Fed. Cir. 1988) (noting that the inequitable conduct question "is still relevant to Kason's request for attorney fees under 35 U.S.C. § 285 . . . as bearing on the question whether the case is 'exceptional'"); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed. Cir. 1983) (finding that, despite holding

of invalidity, "the inequitable conduct issues . . . remain alive as to the claim for attorney fees").

In their reply, Howmedica distinguishes the above-cited cases by noting that in each of those cases, "the district court conducted bench trials in which infringement, validity, and enforceability all had been addressed." (Pl.'s Reply Br. at 1; Doc. No. 153.) Howmedica argues that each of these cases are different from the current matter because inequitable conduct had already been tried at the bench trials, and was never tried in the matter *sub judice*. (*Id.*)

The Court agrees with Wright that the inequitable conduct counterclaim is not moot. Though the '100 patent has been held anticipated by the Hollister patent, and the Court has adjudged claims 15 and 18 – the only claims asserted in this lawsuit – invalid for anticipation, Wright's claim for attorney's fees maintains the inequitable conduct counterclaim as an actual case and controversy. *Leibel-Flarsheim* is not controlling because that case did not include an application for attorney fees. *Leibel-Flarsheim*, 481 F.3d at 1383. Here, Wright has made an application for attorney fees based on inequitable conduct as early as their first amended answer and counterclaim, which was filed on October 9, 2002. (Doc. No. 34.) Therefore, the Court concludes that the inequitable conduct counterclaim is not moot.

### b. The Court's Discretion to Decline Jurisdiction

Howmedica next argues that the Court should decline jurisdiction to issue a declaratory judgment, because "the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction." (Pl.'s Br. at 5; Doc. No. 151-1 (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996)).) The Court agrees that it may decline jurisdiction, but declines to do so. The Court concludes that judicial resources

7

would be best conserved by deciding the inequitable conduct counterclaim before this case's next appeal to the Federal Circuit.

### c. *The Pleading Standard for Inequitable Conduct*

Howmedica next argues that the Court should grant a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and dismiss Wright's inequitable conduct allegations because they do not meet a heightened pleading standard. (Pl.'s Br. at 9; Doc. No. 151-1.) Howmedica argues that Wright's counterclaim "fails to allege sufficient underlying facts from which a court may reasonably infer that a party acted with a requisite state of mind, i.e., deceptive intent." (*Id.* at 11.) Wright's counterclaim, in pertinent part, states "[t]he '100 patent is unenforceable due to inequitable conduct committed by Howmedica Osteonics and/or its agents, representatives or attorneys, and/or the named inventors . . ." and specifically states that "Mark A. Kester and prosecuting attorney Arthur Jacob were both aware of [the Hollister patents]." (Def.'s Countercl. at ¶ 29; Doc. No. 34.)

The Federal Circuit has held that inequitable conduct is analogous to fraud, which under Rule 9(b) of the Federal Rules of Civil Procedure must be pled with particularity. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). The *Exergen* court summarized its pleading standard for inequitable conduct as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading party must identify the specific who, what, when, where, and how of the material misrepresentation of omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the

>   withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328-29.

Wright counters Howmedica's pleadings argument by noting that: (1) the Pretrial Order supplants the counterclaim, and contains more than enough specificity to satisfy *Exergen*; and (2) other pleadings and evidence satisfy the standard. (Def.'s Br. at 20-23; Doc. No. 152-3.) Under Federal Rule of Civil Procedure 16, the Pretrial Order "controls the course of the action unless the court modifies it." FED. R. CIV. P. 16(d). Indeed, "[w]hen entered, the order limits the issues for trial and takes the place of the pleadings covered by the pretrial order." *Fineman v. Armstrong World Indus.*, 774 F. Supp. 225, 230-31 (D.N.J. 1991) *rev'd on other grounds*, 980 F.2d 171 (3d Cir. 1992); *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) (recognizing that the pretrial order "supersedes the pleadings"). The pretrial order contains the following factual allegations:

>   328.   Dr. Kester worked with Dr. Hollister at Tulane and was aware of Dr. Hollister's research work at Tulane.
>
>   329.   While working with Dr. Hollister at Tulane, Dr. Kester learned about Dr. Hollister's research work before she came to Tulane.
>
>   330.   Prior to filing this application for the '100 patent, Dr. Kester learned about Dr. Hollister's research work after she left Tulane, which formed the basis for the Hollister '758 patent.
>
>   331.   Dr. Kester's contribution to the alleged invention of the '100 patent was based upon and derived from the work of Dr. Hollister, including as set forth in her patents and publications.
>
>   332.   Dr. Kester was not only aware of Dr. Hollister's patents, but he had studied them very carefully.

333. Mr. Weissman was also aware of the Hollister patents, at least by the time that the '100 patent was being prosecuted.

334. Other Howmedica Osteonics representatives also knew about the Hollister patents at least as early as January 20, 1997, during the prosecution of the application that became the '100 patent.

335. Arthur Jacob prosecuted the application that became the '100 patent and was aware of the Hollister patents.

336. In the course of prosecuting the application for [the] '100 patent, Mr. Jacob submitted proposed claims to the PTO which were covered by the Hollister patents that he was withholding from the PTO.

337. The '758 and '361 Hollister patents are both highly material references, and not cumulative of other prior art.

338. The withholding of the '758 Hollister patent and/or the '361 Hollister patent was done with an intent to deceive the PTO.

(Pretrial Order at ¶¶ 328-338; Doc. No. 46.)

The Court concludes that these allegations are sufficient to allege inequitable conduct under *Exergen*. Though the Pretrial Order makes the legal conclusion that the withholding of the Hollister patents was done "with an intent to deceive the PTO" (*Id.* at ¶ 338), the identification of the individuals involved, the information withheld, and why it was material is sufficient to give rise to an inference of inequitable conduct under *Exergen*. Here, in lieu of a confession by the plaintiff that it "intended to withhold the Hollister patent from the USPTO," there is little more that Wright could allege to state a claim for inequitable conduct. The Pretrial Order, the controlling document in this case, satisfies the heightened *Exergen* pleading standard.

### 2. Inequitable Conduct

To prevail on inequitable conduct, "a defendant must present 'evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material

10

information, or submitted false material information, and (2) intended to deceive the [USPTO].'" *Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009) (quoting *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)). Both of these factual elements require proof by clear and convincing evidence. *Id.* The Federal Circuit has stated that "[t]he required showings of materiality and intent are separate, and a showing of materiality alone does not give rise to a presumption of intent to deceive." *Praxair v. Advanced Tech. Materials*, 543 F.3d 1306, 1313 (Fed. Cir. 2008); *see also Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

Recognizing that an admission tantamount to "we intended to deceive the patent office" is exceedingly rare, the Federal Circuit developed a three part test (the "*Praxair* test") wherein a court can infer an intent to deceive. An inference of intent to deceive is generally appropriate when: "(1) highly material information is withheld; (2) the applicant knew of the information [and] . . . knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding." *Praxair*, 543 F.3d at 1313-14; *see also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006); *Pfizer v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1367 (Fed. Cir. 2008). "Once threshold findings of materiality and intent are established, the trial court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006). "[A] disputed finding of intent to mislead or to deceive is one for the judge to resolve, not the jury, albeit not on summary judgment if there is a genuine dispute." *Paragon Podiatry*, 984 F.2d at 1190.

In the context of a summary judgment motion, it is first necessary to re-state that the

Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). Howmedica argues that summary judgment must be entered declaring that no inequitable conduct occurred, while Wright argues that summary judgment must be entered because Howmedica's actions meet the *Praxair* three-part test for inferring intent to deceive. (Pl.'s Br. at 17; Doc. No. 151-1; Def.'s Br. at 5; Doc. No. 152-3.)

The *Praxair* test for inferring intent to deceive is just that - an inference. For the purposes of these summary judgment motions, the Court is required to draw all reasonable inferences in the light most favorable to the non-moving party. To draw an inference using the *Praxair* test on dueling summary judgment motions would require undisputed material facts showing the Court that inequitable conduct did or did not occur. This is not the case.

With respect to the *Praxair* analysis, there are disputed issues of material fact with regard to the second prong: whether the parties prosecuting the '100 patent knew or should have known of the materiality of the Hollister reference, specifically whether they understood its materiality. (*See, e.g.*, Mentlik Decl. Ex. H (a letter from Mr. Zarnowski to Mr. Jacob stating that "I don't believe the [enclosed reference] is anymore pertinent than the Hodge, Helfet or Hollister references," suggesting that they did not believe Hollister was particularly pertinent). *But see* Jacob Trans. (O'Malley Cert. Ex. E) at 211:15-17 ("[t]he novel feature was not the concept of locating the center of this radius on that axis because that had been done before and I suspect it was Hollister that - that did that").) The Court is then left with the threshold standard for inequitable conduct: that "a defendant must present 'evidence that the applicant (1) made an

affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [USPTO].'" *Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009) (quoting *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). Both of these factual elements require proof by clear and convincing evidence. *Id.*

Howmedica's submissions have not shown as a matter of law that it did not engage in inequitable conduct. Further, Wright's submissions fail to show inequitable conduct by clear and convincing evidence. The undisputed material facts only show that a highly material reference was withheld from the USPTO and was later held to invalidate claims 15 and 18 of the '100 patent. Though it is obvious that the Hollister reference was highly material,[1] whether the individuals involved in the prosecution of the '100 patent acted with the requisite intent to deceive the USPTO cannot be proven or disproven as a matter of law in this case. There are disputed issues of fact regarding whether the individuals involved in prosecuting the '100 patent intended to deceive the USPTO or whether it was simply a mistake or omission. As such, the Court will deny Howmedica's motion for summary judgment, and will also deny Wright's motion for summary judgment.

### III.  CONCLUSION

For the reasons discussed herein, the Court will deny Howmedica's motion for summary

---

[1] It is difficult to see how an invalidating reference could not be highly material. Plaintiff, however, argues that this reference is not highly material because it respectfully disagrees with this Court's decision to adjudge claims 13 and 15 invalid as a matter of law. (Pl.'s Reply Br. at 5; Doc. No. 153.)

judgment and deny Wright's motion for summary judgment. An appropriate form of order is filed herewith.

Dated: March 30, 2010

                                                  s/ Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.